UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DOOR COUNTY MEMORIAL HOSPITAL, INC.,

    Plaintiff,

v.                                                        Case No. 07-C-0790

ANTHEM ALLIANCE HEALTH INSURANCE
COMPANY, HUMANA MILITARY HEALTHCARE
SERVICES, INC., AND HEALTH NET FEDERAL
SERVICES, INC. et al.,

    Defendants.

---

**DECISION AND ORDER**

---

Plaintiff Door County Memorial Hospital, Inc. ("DCMH") filed this action to recover in excess of $1.8 million of unpaid charges it incurred for medical care and treatment DCMH provided to beneficiaries of the Civilian Health and Medical Program of the United States ("CHAMPUS") TRICARE Managed Care Program pursuant to the Hospital Participation Agreement that DCMH first entered with Health Care Service Corporation ("HCSC") in June 1998.[1] In the years that

---

[1] CHAMPUS is the civilian sector of a federal health care program established by the Department of Defense ("DOD") in 1967 for retired armed forces members and dependants of both active and retired armed forces services members. In 1995, the DOD established the TRICARE program, a regionally managed health care program operating as a supplement to CHAMPUS for active duty, activated guard and reserves, retired members of the uniformed services, their families, and survivors. The TRICARE program includes as a component the competitive selection of private contractors to financially underwrite the delivery of health care services to CHAMPUS/TRICARE beneficiaries throughout the United States. (Am. Compl. ¶ 12-14.) *See* 10 U.S.C. § 1086 and 32 C.F.R. § 199.17 (2006).

followed, HCSC's rights and obligations under the Agreement were assigned to and/or assumed first by Defendant Anthem Alliance Health Insurance Company ("Anthem"), then by Defendant Humana Military Healthcare Services, Inc. ("Humana"), and, finally, by Defendant Health Net Federal Services, Inc. ("HNFS").[2] DCMH claims that each of the Defendants breached the Agreement by failing to pay it 100% of its billed charges for all inpatient services and all outpatient non-surgical services rendered to CHAMPUS/TRICARE beneficiaries. (*Id.* ¶ 25.) In addition to breach of the Hospital Participation Agreement, DCMH has also asserted claims against each Defendant for breach of implied contract and promissory estoppel. DCMH also claims that the Defendant violated 32 C.F.R. § 199.14, which governs CHAMPUS provider reimbursement methods.

The case is presently before the Court on HNFS's motion to stay further proceedings and compel arbitration, or alternatively, to dismiss the case for lack of jurisdiction. For the reasons stated herein, HNFS's motion will be granted, the claims against it stayed, and the DCMH directed to submit its claims against HNFS to arbitration.

**DISCUSSION**

The Hospital Participation Agreement under which Door County was to provide and receive reimbursement for covered health care services to CHAMPUS/TRICARE beneficiaries includes a dispute resolution provision, which states,

> Except for disputes related to medical malpractice or as otherwise provided herein, if any dispute arises out of or relates to this Agreement, Hospital shall follow the Provider Appeal procedure described in the Provider Manual. In the event that fails to resolve the dispute, HCSC and Hospital shall meet to attempt to resolve the

---

[2] Though DCMH originally named HCSC as a defendant, it has since voluntarily dismissed HCSC from the case.

2

dispute. If such efforts are unsuccessful, the complaining party shall provide written notice to the other party describing the dispute within twenty (20) days of the meeting. The dispute will be resolved, on a confidential basis, under the commercial arbitration rules of the American Arbitration Association.

(Am. Compl., Ex. A, Agreement Art. VII.) HNFS argues that it is entitled to enforcement of this provision under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq*.[3]

DCMH does not deny the existence of the arbitration clause in the Agreement under which its claims arise, nor does it dispute that the clause is enforceable under the FAA. Instead, DCMH argues that the arbitration clause does not apply to the dispute it has raised here. In support of its argument, DCMH notes that arbitration is the last step in a "Dispute Resolution" procedure set forth in the Agreement. The first step is the Provider Appeal procedure described in the Provider Manual. In the event the Provider Appeal does not result in a resolution of the dispute, the parties must meet to attempt to resolve the dispute. Only then if the dispute is still unresolved is it submitted to arbitration. DCMH contends that claims of underpayment by HNFS are not subject to this procedure because under the Anthem Provider Manual it initially received, underpayment claims were not appealable. Since it was unable to raise such claims under the procedure described in the Provider Manual, DCMH claims that it could never progress past the first step in the dispute

---

[3] The Federal Arbitration Act provides,
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
9 U.S.C. § 2.

resolution procedure. And since it could never pursue an underpayment claim past the first step, the arbitration clause never could come into play. Thus, DCMH contends that underpayment claims are not subject to arbitration. (Br. Opp. 6-9.)

HNFS disputes Door County's allegation it could not pursue a Provider Appeal on an underpayment claim. HNFS contends that its own Provider Manual, which replaced the Anthem Manual DCMH received from HCSC, expressly permits Provider Appeals on payment disputes. (Reply 6-8.) But more importantly, Health Net argues, even if, as DCMH alleges, the procedures identified in the Agreement were not available to resolve this dispute, the terms of the provision provide for just such an event, and indicate that upon a failure of the appeal procedures to resolve a dispute, the parties are to meet in an attempt to resolve the matter, provide written notice of the dispute if their meeting is unsuccessful, and proceed to arbitration. (Reply 1-2, 8.)

HNFS has the better argument. "[T]he FAA embodies a strong federal policy in favor or arbitration." *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Intern., Ltd.*, 1 F.3d 639, 641 (7th Cir. 1993). The Seventh Circuit has explained that "once it is clear that the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration." *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (holding that the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."), *superceded by statute*, 9 U.S.C. § 16(b)(1), *on other grounds*. "An order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible

4

of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

The arbitration provision at issue in this case is extremely broad. It applies to "any dispute [that] arises out of or relates to this Agreement." (Am. Compl. Ex. A, Art. VII.) Where parties have agreed to arbitrate all disputes "arising out of" their agreement, the scope of the agreement to arbitrate "reaches all disputes having their origin or genesis in the contract." *Sweet Dreams Unlimited, Inc.*, 1 F.3d at 642; *see also Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (holding that arbitration provisions containing the language "arising out of or relating to" the parties' agreement are "extremely broad and capable of an expansive reach").

DCMH's claims that the Defendants underpaid DCMH for its services to CHAMPUS/ TRICARE beneficiaries clearly "arise out of" and "relate to" the Agreement and thus fall squarely within the scope of the arbitration clause. Although DCMH argues that the Provider Appeal procedures referenced in the arbitration provision constitute conditions precedent to the duty to arbitrate that it was prevented from exhausting, this does not remove the subject matter of the dispute from the scope of the provision. As the Seventh Circuit has explained,

> [S]ubstantive arbitrability refers to whether a dispute involves a subject matter that the parties have contractually agreed to submit to arbitration, while procedural arbitrability refers to whether particular grievance procedures apply to a dispute, whether the procedures have been followed or excused, and whether the unexcused failure to follow such procedures avoids a party's duty to arbitrate.

*Beer, Soft Drink, Water, Fruit Juice, Carbonic Gas, Liquor Sales*, 763 F.2d 300, 302-03 (7th Cir. 1985). Disputes over substantive arbitrability, such as whether an arbitration clause in a concededly binding contract applies to a particular type of controversy, are matters for the Court to decide, while "procedural" questions such as the fulfillment of conditions precedent, concerns of timeliness,

5

"or a like defense to arbitrability" are matters to be resolved by an arbitrator. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002).

Here, the parties disagree as to whether the Provider Appeal grievance procedures apply to this dispute, whether any failure to comply with the procedures was excused, and whether the alleged unavailability of the procedures permits DCMH to avoid its duty to arbitrate. These are matters best left to an arbitrator. Therefore, I need not resolve the parties' dispute regarding which Provider Manual supplies the relevant procedures. Because the subject matter of DCMH's claims falls within the parties' agreement to arbitrate, HNFS's motion to compel arbitration will be granted.

HNFS has requested that upon granting its motion to compel, the Court either dismiss this case in its entirety for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), or stay the case pending arbitration, pursuant to the FAA, 9 U.S.C. § 3.[4] HNFS contends that although the FAA requires that courts enter a stay pending arbitration when issues brought before them are subject to arbitration clauses, the Court may nonetheless dismiss a case if all of the issues raised before it are arbitrable. This argument finds some support in the caselaw of other circuits, and even the decisions of district courts within the Seventh Circuit. *See e.g., Choice Hotels International, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("Notwithstanding the

---

[4] The FAA, 9 U.S.C. § 3, provides,
If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

6

terms of § 3 . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."); *Tupper v. Bally Total Fitness Holding Corp.*, 186 F. Supp. 2d 981, 992 (E.D. Wis. 2002) (dismissing case without prejudice, stating that because "all of the issues raised in the plaintiffs' complaints are arbitrable, retaining jurisdiction and staying these actions will serve no purpose").

However, the Seventh Circuit Court of Appeals "has noted on numerous occasions, the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) (internal quotation omitted) (citing *Tice v. American Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002)); *see Kroll v. Doctor's Associates, Inc.*, 3 F.3d 1167, 1172 (7th Cir. 1993) (reversing a district court's dismissal without prejudice, concluding "the proper disposition is a stay rather than a dismissal," and finding no authority for dismissal where "the relevant portion of the Federal Arbitration Act, pursuant to which the district court acted, authorizes only a stay of litigation pending completion of the arbitration proceedings").

Here, HNFS claims, in support of dismissal, that "there is no chance that this case will return to this forum," (Br. Supp. 7) but DCMH maintains it is not required to arbitrate its claims because HNFS prevented it from exhausting contractual condition precedents. Although the issue is one for the arbitrator to resolve, a finding in DCMH's favor as to these procedural issues could conceivably prompt the return of the parties to this Court. In addition, Defendants Anthem and Humana have not joined in HNFS's motion. Under these circumstances, and in light of the Seventh Circuit's recent decision in *Halim* reiterating the propriety of a stay, I conclude that stay of the claims against HNFS pursuant to 9 U.S.C. § 3 is appropriate.

7

## CONCLUSION

For these reasons, HNFS's motion to compel arbitration is granted, and all claims against HNFS in this action are hereby stayed pending the outcome of arbitration. The parties are ordered to notify the Court in writing of the resolution of the arbitration when one has been reached. Since neither Anthem, nor Humana, has sought to enforce the arbitration provision, DCMH's claims against them will proceed for now.

**SO ORDERED** this   12th   day of August, 2008.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
